United States District Court
Southern District of Texas

**ENTERED**

August 24, 2017

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SURESHOT GOLF VENTURES, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-127 |
| | § | |
| TOPGOLF INTERNATIONAL, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is defendant Topgolf International, Inc.'s ("Topgolf") motion to dismiss. Dkt. 10. Having reviewed the motion, response, reply, and the applicable law, the court is of the opinion that Topgolf's motion to dismiss (Dkt. 10) should be GRANTED.

### I. BACKGROUND

This is an antitrust case between plaintiff SureShot Golf Ventures, Inc. ("SureShot") and defendant Topgolf. Topgolf was established in 2000 with multiple locations in the United States and the United Kingdom as a "golf entertainment center"[1] which offers point-scoring golf games as well as food and beverages. Dkt. 1. Customers hit golf balls toward a series of holes and are scored based on distance and accuracy. *Id.* SureShot was established at or around 2014 with the intent to compete with Topgolf's golf entertainment centers. *Id.* at 5.

At issue is the technology used to track the location of each golf ball. Topgolf developed its own proprietary technology to track the location of the golf balls. Dkt. 1. SureShot has licensed the

---

[1] SureShot uses the terms "golf entertainment centers," "golf entertainment facilities," and "golf entertainment venues" interchangeably throughout its complaint. *See e.g.*, Dkt. 1 at 1, 2, 5, 8, 12, 13. For purposes of this order, the court will use the term "golf entertainment centers."

use of the ball-tracking technology, the Protracer Range System, produced by the Swedish company Protracer.  Dkt. 1.  SureShot alleges that the Protracer model is "superior" to Topgolf's because the Protracer's software tracks the balls in flight, adds graphics to make the ball visible in near real time on a television monitor, and thus creates a three-dimensional gaming experience.  *Id.* SureShot contends that Protracer's proprietary hardware, technology, and licensed software is integral to SureShot's business model.  *Id.*

On April 17, 2015, SureShot entered into a five-year licencing agreement with Protracer, that lasts from 2015 to 2020 (the "Frame Agreement").  The Frame Agreement required Protracer to install Protracer Range Systems in up to 500 SureShot bays and five SureShot facilities each year and provide support and maintenance.  *Id.*  SureShot also alleges that Protracer stated that it would not enter into any exclusive contracts with a licensee.  *Id.*

On May 24, 2016, Topgolf acquired Protracer and the Protracer Range System.  Dkt. 1. According to Topgolf, SureShot continues to use the Protracer technology and it has not been deprived of any access.  Dkt. 10.  SureShot, however, argues that Topgolf's acquisition of Protracer means that Topgolf controls the very technology that SureShot built its business model upon, and thereby "den[ies] SureShot access to long-term, continued licencing of Protracer technology and purchasing of Protracer equipment." Dkt. 1 at 12.  SureShot argues that TopGolf intends to foreclose market competition.  Dkt. 1 at 10.  SureShot cites TopGolf's refusal to give SureShot assurances that Protracer would continue to be available after the expiration of the five-year Frame Agreement as evidence.  Dkt. 1 at 10.  SureShot alleges that an executive from Topgolf said to SureShot that, "If I was in your position, I would look for alternatives."  *Id.*

On January 17, 2017, SureShot filed a complaint against Topgolf alleging four federal antitrust claims: (1) conspiracy under Section 1 of the Sherman Act, (2) monopolization and (3)

2

attempt to monopolize under Section 2 of the Sherman Act (15 U.S.C. § 1, 2), and (4) unlawful acquisition under section 7 of the Clayton Act (15 U.S.C. § 18). Dkt. 1. On April 13, 2017, Topgolf filed a motion to dismiss. Dkt. 10. SureShot responded and Topgolf replied. Dkts. 14, 16.

## II. LEGAL STANDARDS

### A.    Motion to Dismiss for Lack of Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction. Federal courts have limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Under Rule 12(b)(1), a claim is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim. *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

### B.    Motion to Dismiss for Failure to State a Claim

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 127 S. Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

"[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

3

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*  The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence.  *Id.* at 556.  When considering a motion to dismiss for failure to state a claim, "a district court must limit itself to the contents of the pleadings, including attachments thereto."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

## C.     Sherman Act, § 1

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. While section 1 could be interpreted to proscribe all contracts, *see, e.g., Board of Trade of Chicago v. United States*, 246 U.S. 231, 238 (1918), it is never "taken [as] a literal approach to [its] language." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). Rather, section 1 "outlaw[s] only unreasonable restraints [on trade]." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).

## D.     Sherman Act, § 2

Section 2 of the Sherman Act makes it unlawful for an entity to "monopolize."  15 U.S.C. § 2. Monopoly power is "the power to control price or exclude competition."  *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391, 76 S. Ct. 994 (1956).  To prove monopolization, a plaintiff must show: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S. Ct. 1698 (1966).  A prerequisite of an attempted monopolization

4

or monopolization claim is proof of the relevant market. *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1244 (5th Cir. 1985).

**E.      Clayton Act, § 7**

Section 7 of the Clayton Act forbids mergers in any line of commerce where the effect may be "substantially to lessen competition or tend to create a monopoly." 15 U.S.C. § 18; *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 531, 93 S. Ct. 1096 (1973).  But proof of a "mere possibility of a prohibited restraint or tendency to monopol[ize] will not establish the statutory requirement. . . ." *du Pont*, 353 U.S. at 598.

### III. ANALYSIS

SureShot raises four claims under the Sherman Act and the Clayton Act, for conspiracy, attempt to monopolize, monopolization, and unlawful acquisition.  15 U.S.C. §§ 1, 2, 18. Specifically, SureShot alleges that (1) TopGolf acquired the very technology that is essential to SureShot's operations, (2) TopGolf refused to provide SureShot assurances that the Protracer technology will be continuously available after its five-year licencing agreement expires, and (3) any support and maintenance requests placed through Protracer would expose confidential information or SureShot's plans to open a new facility.

Topgolf moves to dismiss the claims because (1) SureShot's claims are not ripe, (2) SureShot failed to plead anticompetitive or exclusionary conduct in its complaint, and (3) SureShot failed to plead a relevant market.  Dkt. 10.  As a threshold matter, the court will first address whether SureShot's claim is ripe, to confer standing. *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130 (1992).

5

A.      **Article III Standing**

Standing requires plaintiffs "to demonstrate: they have suffered an 'injury in fact;' the injury is 'fairly traceable' to the defendant's actions; and the injury will 'likely . . . be redressed by a favorable decision." *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) (quoting *Lujan*, 504 U.S. at 560–61). "An injury in fact [is] an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Standing is jurisdictional in nature and should be decided by the court before reaching the merits of the case. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–94, 118 S. Ct. 103 (1998).

Topgolf moves to dismiss SureShot's claims, arguing that none of the claims is ripe for judicial determination because SureShot complains of an anticipated denial of access or future breach of contract. Dkt. 10 at 14; Dkt. 14 at 5. Topgolf argues that SureShot has not suffered any harm because Topgolf has continued to honor the terms of the licensing agreement between Protracer and SureShot. Dkt. 10 at 8. Topgolf argues that SureShot's legal theory is based solely on a prediction that someday Topgolf will decline to renew the existing service contract and thereby eliminate SureShot's continued access to the Protracer Range System. *Id.*

SureShot argues that it is harmed by Topgolf's acquisition of Protracer because (1) all of SureShot's support and maintenance requests must go through Protracer, at which point Topgolf would control the timing, quality, and efficiency of the repairs and replacement parts; (2) Protracer, and thereby Topgolf, would have access to "sensitive, proprietary, and non-public confidential information" that would harm SureShot's competitive advantage; and (3) when SureShot places an order with Protracer for a new installation, Topgolf will have knowledge of SureShot's plans to open a new facility. Dkt. 1 at 8–10. SureShot also argues that Topgolf has deprived SureShot of a

6

competitive opportunity to enter the market and alleges that Topgolf "*will have* complete control over [Protracer], including the ability to license it only to those markets or industries that do not occupy the entertainment golf facility space." Dkt. 1 at 11 (emphasis added).

Topgolf contends that this situation is an option contract, where "challenges to an option are not ripe for resolution before the option is exercised." Dkt. 10 at 13 (citing *Destec Energy, Inc. v. S. Cal. Gas Co.*, 5 F. Supp. 2d 433, 461–62 (S.D. Tex. 1997) (Rosenthal, J.)). Topgolf argues that it simply possesses an option not to renew SureShot's license of the Protracer Range System at the end of the five-year contract, and that SureShot is prematurely suing under the fear that Topgolf will decline to renew or extend the existing contract "when and if it occurs" in the future. Dkt. 10 at 6 (citing *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488 at 489–90 (5th Cir. 1986)).

The court agrees with Topgolf that SureShot has failed to plead that Topgolf has denied it access to the Protracer Range System. *See* Dkt. 14 (Pl. Resp.) at 3 (alleging Topgolf is "[f]orcing its competitor SureShot to incur considerable sums to become a significant competition only to *later* pull the plug on the license in 5 years . . . .") (emphasis added). The Fifth Circuit has held that challenges to an option are not ripe for resolution before the option is exercised. *See Middle South Energy*, 800 F.2d at 490. Further, the court is unpersuaded that the lack of assurances and the statement to look for alternatives that was allegedly made by an unidentified Topgolf executive is equivalent to a denial of access. *See* Dkt. 1 at 10. SureShot has not pled that Topgolf has denied it access to the Protracer technology.

At this point, the court finds that SureShot's perceived threats of monopolistic behavior are speculative and do not confer standing. *Phototron Corp. v. Eastman Kodak Co.*, 842 F.2d 95, 100 (5th Cir. 1988) (holding that the plaintiff must show antitrust injury and that the threat of defendant's monopolistic behavior is not enough to create standing). The court observes that none of the

7

antitrust actions which SureShot alleges has actually occurred (i.e. controlling prices, foreclosing competitors from access to technology, sending less qualified personnel for installation and service requests, licensing the technology only to companies outside of golf entertainment centers).

"Under *Cargill*, a competitor of two merging entities has standing to challenge the merger if an allegation and proof of predatory pricing is made." *Id.* (citing *Cargill*, 479 U.S. at 109); *see* Dkt. 1. Further, in *Red Lion Med. Safety, Inc. v. Gen. Elec. Co.*, a district court denied a motion to dismiss only after the plaintiff had successfully pled that after the defendant entered into an exclusive distributor agreement, other companies were charged a 20% premium on the purchase price of parts and experienced delayed shipments. No. 2-15-CV-307, 2016 WL 3770958, at *1 (E.D. Tex. Mar. 31, 2016). Unlike in *Red Lion*, SureShot's allegations that Topgolf may prolong the wait time or provide lower quality work on SureShot's requests for maintenance and repair have not yet occurred. *Id.*

### B.    Antitrust Standing

Further, the court finds that SureShot not only lacks Article III standing, but also antitrust standing. "A plaintiff has standing to pursue an antitrust suit only if he shows: '1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit.'" *Waggoner v. Denbury Onshore, L.L.C.*, 612 Fed. App'x. 734, 736 (5th Cir. 2015) (citing *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc.,* 123 F.3d 301, 305 (5th Cir. 1997).

The burden is on the plaintiff to prove that "it has or will suffer antitrust injury." *Anago, Inc. v. Tecnol Med. Prods., Inc.*, 976 F.2d 248, 249 (5th Cir. 1992). The Supreme Court has defined antitrust injury as an injury "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Id.* (quoting *Cargill, Inc. v. Monfort of Colo.,*

8

*Inc.*, 479 U.S. 104, 109, 107 S. Ct. 484 (1986)).  The Fifth Circuit has "narrowly interpreted the meaning of antitrust injury [to include increased prices and decreased output, and] excluding from it the threat of decreased competition."  *Anago*, 976 F.2d at 249; *FUNimation Entm't v. A.D. Vision, Inc.*, 4:12-CV-1736, 2013 WL 2189881, at *5 (S.D. Tex. May 20, 2013) (Ellison, J.) (identifying antitrust injury as "some form of predatory pricing or illegal tying . . . when the rival has engaged in something more than vigorous price, produce, or service competition").  The antitrust laws were enacted for "the protection of competition not competitors."  *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S. Ct. 1502 (1962).  "To have antitrust standing, a party must do more than meet the basic case or controversy requirement that would satisfy constitutional standing."  *FUNimation Entm't*, 2013 WL 2189881, at *5..

　　　SureShot failed to plead that Topgolf's actions harmed competition overall, and not just SureShot's competitive advantage.  SureShot argues that it has experienced antitrust injury because "long-term, continued licensing of Protracer technology and purchasing of Protracer equipment" is foreclosed and that SureShot does not have the financial means to develop its own technology or work with another supplier.  Dkt. 1 at 12–13.

　　　The Supreme Court has held that a plaintiff lacks antitrust standing if the same injury-in-fact would have occurred had a company of another size purchased the competing business.  *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 487, 97 S. Ct. 690 (1977) (holding plaintiff's injury of loss of income bore no relationship to the size of the defendant's company because a smaller company acquiring the competing business would harm the plaintiff just the same); *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 321 (5th Cir. 2009) (finding horizontal restraint of trade did not arise when plaintiff would have suffered the same harm whether defendant retained its assets or sold them to another party);  *Anago*, 976 F.2d at 251 (holding plaintiff did not

9

show that higher prices and decreased competition will cause plaintiff injury and that plaintiff "will suffer a loss of independence whether or not [the] takeover violates antitrust principles").

The court finds that SureShot failed to plead that Topgolf's acquisition of Protracer would substantially lessen competition or tend to create a monopoly in the market overall.  A federal court may not take jurisdiction over a matter unless it presents an actual controversy.  *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272–74, 61 S. Ct. 510 (1941).  At this time, the court finds that SureShot has not presented any plausible factual allegations that Topgolf is foreclosing competition through its acquisition of Protracer.  Because SureShot has not pled that Topgolf has denied or refused access to the Protracer Range System, SureShot's claims are not ripe for judicial determination. Accordingly, Topgolf's motion to dismiss is GRANTED.

### IV. CONCLUSION

Topgolf's motion to dismiss (Dkt. 10) is GRANTED.

Signed at Houston, Texas on August 24, 2017.

_____
Gray H. Miller
United States District Judge

10